**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

**REGINA B.,**

      **Plaintiff,**

**vs.**                          **CIVIL ACTION NO. 2:23-CV-00374**

**KILOLO KIJAKAZI, ACTING**
**COMMISSIONER OF SOCIAL SECURITY,**

      **Defendant.**

<u>**PROPOSED FINDINGS AND RECOMMENDATION**</u>

      This is an action seeking review of the final decision of the Acting Commissioner of Social Security denying the Plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. By Order entered May 11, 2023 (ECF No. 2), this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are the Plaintiff's Brief in support of her complaint (ECF No. 7) and the Defendant's Brief in Support of Defendant's Decision (ECF No. 8).

      Having fully considered the record and the arguments of the parties, the undersigned respectfully **RECOMMENDS** that the United States District Judge **DENY** the Plaintiff's request for remand (ECF No. 7), **GRANT** the Defendant's request to affirm the final decision (ECF No. 8); **AFFIRM** the final decision of the Acting Commissioner; and **DISMISS** this matter from the Court's docket for the reasons stated *infra*.

<u>**Procedural History**</u>

The Plaintiff protectively filed her application for DIB on February 26, 2021 alleging disability beginning December 31, 2012 because of spondylosis, depression, high blood pressure, high cholesterol, neck fusion, and spinal cord compression. (Tr. at 10, 238)[1] Her claim was initially denied in July 2021 (Tr. at 10, 60-63) and again upon reconsideration in January 2022 (Tr. at 10, 65-69). Thereafter, she filed a written request for hearing on February 2, 2022 (Tr. at 90-91).

An administrative hearing was held on September 16, 2022 before the Honorable Nathan Brown, Administrative Law Judge ("ALJ"). (Tr. at 32-59) On September 28, 2022, the ALJ entered an unfavorable decision. (Tr. at 7-26) On October 17, 2022, the Plaintiff sought review by the Appeals Council of the ALJ's decision. (Tr. at 146-148, 149-151) The ALJ's decision became the final decision of the Commissioner on March 14, 2023 when the Appeals Council denied the Plaintiff's Request for Review. (Tr. at 1-6)

On May 7, 2023, the Plaintiff timely brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (ECF No. 1) The Defendant (hereinafter referred to as "the Commissioner") filed a Transcript of the Administrative Proceedings. (ECF No. 6) Subsequently, the Plaintiff filed her Brief in support her complaint (ECF No. 7), and in response, the Commissioner filed a Brief in Support of Defendant's Decision (ECF No. 8); finally, the Plaintiff filed her Reply Brief (ECF No. 9). Consequently, this matter is fully briefed and ready for resolution.

**The Plaintiff's Background**

The record shows that the Plaintiff was 45 years old as of the alleged onset date, and 51 as of her date last insured ("DLI"), thus transitioning from a "younger person" to a "person closely

---

[1] At the time the Plaintiff filed her application, she was "currently working", however, her work activity did not rise to the level of substantial gainful activity as of the alleged onset date. (Tr. at 12, 238)

approaching advanced age" during the underlying proceedings. See 20 C.F.R. § 404.1563(c), (d). (Tr. at 60) She has a high school education, and she had been working as a pharmacy technician for over thirteen years and sometimes cleaned houses (Tr. at 51, 190-197, 239).

**Standard**

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 404.1520. If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. § 404.1520(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. § 404.1520(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. § 404.1520(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. § 404.1520(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. Id. § 404.1520(f). By satisfying inquiry four, the claimant establishes a *prima facie* case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).

The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental

capacities and claimant's age, education and prior work experience. Id. § 404.1520(g). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration ("SSA") "must follow a special technique at every level in the administrative review process." 20 C.F.R. § 404.1520a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment.

Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in Section 404.1520a(c):

> (c) *Rating the degree of functional limitation.* (1) Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.
> (3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. See 12.00E of the Listings of Impairments in appendix 1 of this subpart.
> (4) When we rate the degree of limitation in the first three functional areas (understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself), we will use the following

five-point scale: None, mild, moderate, marked, and extreme. The last point on the scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. Id. § 404.1520a(d)(1).

Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. Id. § 404.1520a(d)(2).

Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the claimant's residual functional capacity. Id. § 404.1520a(d)(3). The Regulations further specify how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

Id. § 404.1520a(e)(4).

## Summary of ALJ's Decision

In this particular case, the ALJ found the Plaintiff's DLI was March 31, 2019. (Tr. at 12,

Finding No. 1) Next, the ALJ determined that the Plaintiff satisfied the first inquiry because she had not engaged in substantial gainful activity since the alleged onset date of December 31, 2012 through her DLI of March 31, 2019. (Id., Finding No. 2) Under the second inquiry, the ALJ found that through her DLI, the Plaintiff has the following severe impairments: degenerative disc disease; obesity; and bilateral hip bursitis. (Tr. at 13, Finding No. 3) At the third inquiry, the ALJ concluded that through her DLI, the Plaintiff's impairments or combination thereof did not meet or equal the level of severity of any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Id., Finding No. 4) The ALJ then found that through her DLI, the Plaintiff has the residual functional capacity ("RFC") to perform light work, except:

> frequently reaching overhead bilaterally. The claimant could climb ramps and stairs occasionally, never climb ladders, ropes or scaffolds, balance frequently, stoop frequently, kneel occasionally, crouch occasionally, and crawl occasionally. The claimant could work at unprotected heights frequently, around moving mechanical parts occasionally, and in vibration frequently. Her work should have involved no commercial driving.

(Tr. at 14, Finding No. 5)

At step four, the ALJ found that through her DLI, the Plaintiff was capable of performing her past relevant work as a pharmacy technician. (Tr. at 20, Finding No. 6) Finally, the ALJ determined the Plaintiff has not been under a disability from December 31, 2012 through March 31, 2019. (Id., Finding No. 7)

**The Plaintiff's Challenges to the Commissioner's Decision**

The Plaintiff alleges that the ALJ's RFC assessment is flawed because she failed to assess the total limiting effects of the Plaintiff's impairments that prevent her from performing light work. (ECF No. 7 at 3-6) The Plaintiff indicates that the ALJ also discredited her subjective complaints, relying on the lack of objective evidence, contrary to the Fourth Circuit's holding in Arakas v.

SSA, 983 F.3d 83 (4th Cir. 2020) and Social Security Ruling (SSR) 16-3p; additionally, the ALJ relied on an incorrect regulatory framework in the RFC assessment akin to the situation presented in Dowling v. Comm'r of SSA, 986 F.3d 377 (4th Cir. 2021). (Id. at 6-9) The Plaintiff's self-described limitations are consistent with the evidence and the ALJ did not reasonably or logically find to the contrary (Id. at 9-10). The ALJ found every medical opinion unpersuasive, resulting in his own unqualified interpretation of raw medical data in determining the Plaintiff's functioning, by failing to account for the waxing and waning of the Plaintiff's physical impairments. (Id. at 10-11) The Plaintiff also asserts that the ALJ undermined the Plaintiff's self-described limitations by failing to properly consider the other evidence of record – that is the factors enumerated under Section 1529 – by improperly increasing the Plaintiff's burden of proof to support her subjective symptoms. (Id. at 11-15) Because of all these errors, the Plaintiff asks this Court to remand for further proceedings, as any other outcome prevents the Plaintiff from filing a new claim for DIB. (Id. at 16)

In response, the Commissioner states that the ALJ appropriately evaluated the Plaintiff's subjective complaints in compliance with legal standards when assessing her RFC, including the Plaintiff's self-described limitations against the entire record, which included the medical and other evidence. (ECF No. 8 at 8-9) The Commissioner argues the ALJ noted the Plaintiff had minimal treatment with significant gaps in her treatment prior to her DLI despite her allegations of pain and functional limitations: treatment records showed that the Plaintiff had hardly any treatment from her alleged onset date in 2012 until early 2019. (Id. at 9-10) The Commissioner contends the ALJ properly considered the Plaintiff's impairments in his evaluation of the opinion evidence, which was not the result of interpreting medical data, but an appropriate assessment of

whether the opinions were consistent with the available records. (Id. at 10-11) The evidence did not support the degree of limitations she alleged the Plaintiff's alleged symptoms, including her post-DLI use of an assistive device. (Id. at 11-12) The Commissioner notes that the Plaintiff's reliance on Arakas is misplaced, given the Plaintiff's impairments here actually can produce objective medical evidence, which the ALJ discussed, noting that the Plaintiff showed improvement with conservative treatment. (Id. at 12) The ALJ acknowledged the Plaintiff's alleged symptoms, and found they were not entirely consistent with the evidence: this included her activities of daily living as well as the Plaintiff's response to medication, treatment and other measures – all demonstrating the Plaintiff's condition was stabilized, or reasonably controlled. (Id.) The ALJ's failure to discuss the Plaintiff's work history does not constitute reversible error, as there is no indication this would have affected the outcome of the decision; the Plaintiff essentially asks the Court to impermissibly re-weigh the evidence. (Tr. at 13) The Plaintiff's interpretation of Dowling is incorrect and inapposite to this case. (Id. at 14-15) The Commissioner argues the final decision is supported by substantial evidence and asks this Court to affirm. (Id. at 15)

In reply, the Plaintiff argues the Commissioner understates the application of Arakas, and that the Fourth Circuit has emphasized that a claimant may rely on subjective symptoms alone in other physical impairments, including classic orthopedic impairments, not just fibromyalgia or other impairments that do not typically manifest in objective clinical findings. (ECF No. 9 at 1-3) The Plaintiff reasserts that her self-described limitations are supported by her activities of daily living, and not inconsistent with them, contrary to the ALJ's findings. (Id. at 4)

**The Relevant Evidence of Record**[2]

The undersigned has considered all evidence of record, including the medical evidence, pertaining to the Plaintiff's arguments and discusses it below.

Medical Records:

During the relevant timeframe, the Plaintiff had an MRI of the lumbar spine in May 2014, which revealed multilevel degenerative disc disease (Tr. at 832). A repeat MRI in January 2019 again confirmed degenerative disc disease at multiple levels of the lumbar spine (Tr. at 279-281).

The Plaintiff's orthopedic treatment records consist of a visit in 2017 for an ankle sprain with her physical examination revealing ambulation with a normal gait, intact sensation to light touch in all extremities, normal strength, and no reduced range of motion in the extremities (Tr. at 346-349). The Plaintiff's orthopedic treatment included two visits to Angela Miller, N.P., in February 2019 (Tr. at 350-355). Treatment notes from the first visit showed some tenderness in the lower lumbar spine with mildly reduced range of motion, and tenderness in the lower extremities; the Plaintiff received an injection in each hip bursa (Tr. at 350-353). Treatment notes from the second visit showed improvement from the injections with tenderness in the lower extremities and normal range of motion (Tr. at 354-355).

In January 2019, the Plaintiff sought pain management treatment at Mountaineer Pain Relief and Rehabilitation Center, where it was noted she had cervical and lumbar tenderness as well as tenderness of the bilateral hips (Tr. at 303-304). The Plaintiff stated she did home exercises, stretches, and used ice (Tr. at 303). She again visited Mountaineer Pain Relief and Rehabilitation

---

[2] The undersigned focuses on the relevant evidence of record pertaining to the issues on appeal as referenced by the parties in their respective pleadings. As acknowledged by the parties, the pertinent medical evidence of record in this appeal concerns the treatment for the Plaintiff's physical impairments, specifically back, neck, leg and hip issues and their associated symptoms, including, but not limited to, pain.

Center in February 2019 for neck and low back pain and reported doing home exercises and stretches (Tr. at 300). Her physical examination revealed full bilateral lower extremity strength, full bilateral upper extremity strength, negative straight leg raises, and tightness and tenderness in various parts of the neck, lower back, and hips (Id.). She went for a follow- up visit in March 2019 and requested injections because "she has had those in the past and they do help" (Tr. at 298). A physical examination showed varying degrees of pain and strength in the lower extremities, with tenderness in the neck, lower back, and hips (Id.).

Prior Administrative Medical Findings:

At both the initial and reconsideration levels of review, State agency medical consultants, Atiya Lateef, M.D., and Saima Noon, M.D., both opined there was insufficient information to complete a physical RFC evaluation. (Tr. at 18, 60-63, 65-69)

Medical Opinion Evidence:

Angela Miller, N.P., opined in November 2020 that the Plaintiff had no work restrictions. (Tr. at 19, 376)

In January 2021, Sheena Geer, FNP, BC, documented the opinion of Dr. Houman Khosrovi, M.D., who performed the Plaintiff's neck surgery in February 2021, that the Plaintiff was advised that she could return to work as a pharmacy tech six weeks after her cervical spine surgery, and could return to housekeeping three months after her surgery. (Tr. at 19, 621)

In March 2021, Michelle Mahoney, LPN, provided additional post-surgery instructions that included lifting no more than ten pounds for six weeks and wearing a cervical collar. (Tr. at 19, 665)

The Plaintiff's Self-Described Limitations:

In the July and December 2021 "Function Reports" the Plaintiff completed in connection with her claim for benefits, she reported that she is always in pain and cannot move with experiencing pain. (Tr. at 198, 226) She reported that she must move constantly because of her pain. (Tr. at 227) She stated her husband helps her with personal care including dressing, bathing, and caring for her hair. (Id.) She stated that at times, her husband helps her make it to the bathroom, and that he or her sister help her get in and out of the shower. (Tr. at 199) She does not shower every day because it makes her pain worse. (Tr. at 200) Her husband also helps her put on her pants. (Id.) She has not been able to blow dry or curl her hair in years. (Tr. at 199) She has an assistive device next to her toilet to help her get up and down when no one is available to help. (Id.) She no longer cooks due to her pain. (Tr. at 228) She sleeps in a recliner because lying flat makes her pain worse. (Tr. at 199) Standing too long causes back and neck pain. (Tr. at 200) She reported that her conditions affect lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, stair climbing, and completing tasks. (Tr. at 203, 232)

For daily activities, the Plaintiff spends most days watching television, "all day everyday." (Tr. at 199, 227, 230)

## The Administrative Hearing:

### The Plaintiff's Testimony:

The Plaintiff testified that her neck and back symptoms have been going on for the last ten years, and worsening, but she was afraid to have surgery for a long time because there was a 50/50 chance of making her worse. (Tr. at 42-43) She ultimately had a neck fusion in February 2021. (Tr. at 42) She stated that prior to her DLI, March 2019, she had pain and could barely move her neck, and that she had pain down in her left arm as well as tingling in her fingers. (Tr. at 43, 49)

11

She also had a lot of pain in the middle and lower part of her back, with pain and tingling radiating down her left leg. (Tr. at 44, 46) During that time, she stated that she could stand or walk no more than 10-15 minutes; she tried to do dishes, but "it really does you in." (Tr. at 45) She tried pain medication, injections, and dry needling for her symptoms. (Id.) She testified that before she stopped working as a pharmacy tech, she switched to part-time work to try to sidestep her symptoms so that she could continue working. (Id.) The Plaintiff also cleaned houses a couple of hours a week. (Tr. at 51-52)

The Vocational Expert's Testimony:

In response to the ALJ's hypothetical individual of the Plaintiff's age, education, and work background, with the controlling RFC, the vocational expert testified that the individual could perform the Plaintiff's past relevant work as a pharmacy tech as performed per the Dictionary of Occupational Titles (DOT), but not as the Plaintiff performed it (Tr. at 52-53).

**Scope of Review**

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence, however, the Court determines if the final decision of the Commissioner is based upon an appropriate application of the law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th

Cir. 1990). Further, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4ᵗʰ Cir. 1974). If substantial evidence exists, the Court must affirm the Commissioner's decision "even should the court disagree with such decision." Blalock, 483 F.2d at 775.

**Analysis**

As an initial matter, the Plaintiff must show that she became disabled prior to the expiration of her insured status on March 31, 2019. The DIB program provides for payment of disability benefits to individuals who are "insured" by virtue of their contributions to the Social Security trust fund through Social Security tax on their earnings. 20 C.F.R. § 404.110. To be entitled to DIB in this case, the Plaintiff bears the burden of showing that she became disabled prior to March 31, 2019, the date when her insured status expired for the purposes of DIB. See 42 U.S.C. § 423(a)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a). A claimant who first satisfies the medical requirements for disability only after her date last insured will not be entitled to DIB benefits. 20 C.F.R. § 404.131(a). See also Jenkins v. Astrue, No. 3:10cv705, 2012 WL 3776370, at *3 n.6 (E.D. Va. Apr. 25, 2012) (citing Matullo v. Bowen, 926 F.2d 240, 246 (3d Cir. 1990)) (explaining that a worsened condition or a new impairment arising after the date last insured cannot be a basis for remand or an award of disability benefits). Therefore, the relevant period for purposes of DIB is from December 31, 2012, the date of the Plaintiff's alleged disability onset, to March 31, 2019 when her insured status expired (Tr. at 10-11).

The RFC Assessment:

As noted *supra*, the Plaintiff alleges the ALJ incorrectly assessed a light RFC by failing to consider the limiting effects from her physical impairments. Although the Plaintiff does not directly

challenge the ALJ's evaluation of the opinion evidence, she does argue that his finding each opinion not persuasive is a product of his own interpretation of "raw medical data" and does not provide the necessary substantial evidence to support the unfavorable decision. (See ECF No. 7 at 10-11) Before discussing the medical opinions of record, it is worth noting that the RFC determination is the most a claimant can do despite her restrictions or limitations, and is *solely* an administrative assessment made by the adjudicator based on all the relevant evidence in the record – no medical opinion is required to fashion an RFC determination, but is considered with the overall evidence. See Social Security Ruling (SSR) 96-8p, 1996 WL 3744184, at *1; 20 C.F.R. §§ 404.1545(a) and 404.1527(d); Felton-Miller v. Astrue, 459 Fed. Appx. 226, 230-231 (4th Cir. 2011). SSR 96-8p also provides that "[t]he RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." 1996 WL 374184, at *7.

The Plaintiff does not specify if any medical opinion supports a finding of disability, however, the record shows there are *none*. Regarding the State agency medical consultants opinions, the ALJ noted the record contained "multiple imaging studies and objective examinations from prior to the alleged onset date and essentially during the last three months of insured coverage available for review" and that this evidence demonstrated her "symptoms were essentially stable and required minimal treatment." (Tr. at 18, 358-359, 362-363, 365-366, 535, 550, 575-577)[3] The ALJ further observed from the record during the relevant period:

> gaps in treatment, improvement with conservative therapies such as medication management and injections, and performance during physical examinations are

---

[3] The ALJ noted some examples from the record, including a progress notes dated April 1, 2019 (just after the Plaintiff's DLI), September 4, 2020, and September 21, 2020, from First Settlement Orthopedics; and treatment notes from PARS Brain and Spine Institute dated May 22, 2012, July 17, 2012, and November 19, 2012, which are dated prior to the alleged onset date.

consistent with no greater limitations than found herein. For example, the claimant's generally normal gait and strength findings support allowing performance of light work whereas some findings of tenderness and decreased range of motion warrant including environmental, postural, and reaching limitations. Additionally, the claimant's prescription medications warrant precluding commercial driving. Thus, while the consultants supported their opinions with a summary of the record and explanation of inadequate evidence, the evidence available for review was adequate to determine a residual functional capacity. Therefore, their opinions are inconsistent with the record.

Regarding the Plaintiff's treating providers, it is notable that none found she had any functional limitations that impaired her ability to perform basic work activities. For instance, the ALJ found the opinion of Ms. Miller, *supra*, not persuasive: while the opinion was offered significantly past the Plaintiff's DLI, the ALJ acknowledged that previous imagining studies reveal degenerative disc disease as well as bursitis (Tr. at 19, 387, 388, 831, 833).[4] Significantly, the ALJ determined that "[a] lack of work-related limitations is inconsistent with abnormalities identified within the claimant's objective imaging studies predating the date last insured." (Tr. at 19)

Regarding the opinions provided by Ms. Geer/Dr. Khosrovi, the ALJ merely noted, appropriately, that despite also being offered significantly past the Plaintiff's DLI, the opinion as to the Plaintiff's ostensible return to work concerned an issue reserved for the Commissioner under Section 404.1520b(c)(3). (Tr. at 19) The ALJ also noted that Ms. Mahoney's opinion post-dated the Plaintiff's DLI by two years, and that "it is a temporary restriction offered following a surgical procedure rather than an opinion as to the claimant's functional capacity in a work setting . . . it is not consistent with or indicative of the claimant's functional status during the period under

---

[4] The ALJ referenced radiology studies of the Plaintiff's thoracic spine from April 2010 which showed "mild arthritic changes of the SI joints", an MRI taken of the Plaintiff's lumbar spine on May 7, 2014 revealing "multilevel degenerative disc disease and Modic endplate changes as well as minimal disc bulging at essentially all lumbar levels", as well as an MRI taken of the Plaintiff's cervical cord and spine on July 8, 2011 that showed "[b]road posterior spurs at C3-C4 cause mild-moderate central canal stenosis and the broad disc and spur at C5-C6 cause moderate to severe central canal stenosis (CSF is effaced ventral and posterior to the cord without significant cord compression deformity or edema, at least in the neutral position)."

adjudication." (Id.) Again, the ALJ noted the record from that period showing the Plaintiff's performance during physical examinations, substantial gaps in treatment, and benefits from conservative treatment. (Tr. at 19, 282-305, 348, 351-353, 535, 550, 575-577)[5]

Although the Plaintiff contends that the ALJ substituted his own lay opinion for those provided by the medical sources, this argument appears to hinge mainly on the basis that the ALJ simply did not adopt the Plaintiff's self-described greater restrictions. As noted *supra*, the Fourth Circuit has long recognized that the RFC "is an administrative assessment made by the Commissioner based on all the relevant evidence in the case record." See Felton-Miller, 459 Fed.Appx. at 230-231; see also, Thaxton v. Colvin, No. 2:16-cv-00281, 2017 WL 359219, at *18 (S.D.W. Va. Jan. 3, 2017)(Eifert, M.J.), *report and recommendation adopted by*, 2017 WL 359201 (S.D.W. Va. Jan. 24, 2017); Jackson v. Comm'r, Social Sec., 2014 WL 1669105, at 2 (D. Md. Apr. 24, 2014)("an ALJ need not parrot a single medical opinion, or even assign "great weight" to any opinions, in determining an RFC assessment."); Chapo v. Astrue, 682 F.3d 1285, 1288 (10th Cir. 2012)("[T]here is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question."); Sullivan v. Comm'r of Soc. Sec., 2014 WL 6685075, at *4 (E.D. Cal. Nov. 25, 2014)("It is the ALJ's responsibility to formulate an RFC that is based on the record as a whole, and thus the RFC need not exactly match the opinion or findings of any particular medical source."); Gilmore v. Kijakazi, 2022 WL 2869047, at *8 (M.D.N.C. Jul. 21, 2022)("the ALJ labored under no requirement to

---

[5] In addition to the same medical records the ALJ cited in his evaluation of the State agency medical consultants' opinion, the ALJ also referenced treatment records from Mountaineer Pain Relief & Rehabilitation Centers dated March 4, 2015 through August 28, 2019, as well as treatment records dated December 16, 2017 and February 4, 2019 from Angela D. Miller, N.P., with First Settlement Orthopedics.

fashion an RFC that exactly matched Plaintiff's *testimony* or the opinion evidence."), *report and recommendation adopted by*, 2022 WL 3446133 (M.D.N.C. Aug. 17, 2022)(*emphasis* added).

Instead, an ALJ must consider all relevant evidence in the record, including the medical opinions, and craft an RFC that is supported by substantial evidence. 20 C.F.R. § 404.1545(a)(1). In this case, the ALJ did not engage in "playing doctor" by interpreting imaging or other evidence when he rejected the Plaintiff's self-described limitations: the ALJ relied primarily on the limited medical record from the relevant period and correctly observed that the Plaintiff's primary symptomology – pain – improved with conservative treatment, notwithstanding abnormal imagining readings during the relevant period.[6]

Evaluating Subjective Symptoms:

To the extent the Plaintiff asserts that the ALJ's only reference to Section 404.1545 and SSR 96-8p is in the "boilerplate passage at the beginning of the decision" warrants remand pursuant to Dowling, 986 F.3d at 387 (ECF No. 7 at 8-9), this assertion lacks merit, explained *infra*. In Dowling, the Fourth Circuit noted the ALJ did not cite to these regulatory frameworks *at all*, but instead relied upon the incorrect regulatory framework: SSRs 96-7p and 16-3p, which pertain to the evaluation of a claimant's subjective complaints. Id. And further, unlike in Dowling, the ALJ here considered the Plaintiff's subjective complaints under the two-step test for symptom evaluation, and then went beyond his findings relating to the Plaintiff's subjective complaints when assessing her RFC by considering her response to treatment and medication, while also

---

[6] While the Plaintiff does not challenge the ALJ's findings as they relate to her alleged need for an assistive device, it is also notable that the ALJ found that under SSR 96-9p, there was no evidence in the record that demonstrated the Plaintiff's assistive device was medically necessary. (Tr. at 19) The ALJ observed the Plaintiff had been prescribed a quad cane in May 2021, more than two years after her DLI, and significantly, that she received no treatment and had no reports of knee osteoarthritis symptoms prior to the expiration of her DLI (Id.) Further, the ALJ noted that treatment records from the period under adjudication did not describe her as requiring a cane for ambulation, and that records from March 2021 described the Plaintiff's knee pain "as only being present for about four months." (Tr. at 19, 405)

considering the medical opinions of record. (Tr. at 14-20) Thus, the ALJ did not treat the RFC and symptom evaluation as "one and the same." In the case at bar, even though the ALJ cited to the proper framework early on in the written decision, he obviously carried his analysis through the subsequent steps in the sequential evaluation process.

The Plaintiff argues that the ALJ neglected to adequately discuss the "other evidence" (ECF No. 7 at 12), only acknowledging her allegations that she reported pain with physical activities and relies on her husband for assistance with chores due to pain, but did not factor any of this in his evaluation for the RFC. (Id. at 11, citing Tr. at 15) To the extent that the Plaintiff alleges the ALJ discounted the Plaintiff's allegations based on the objective examination findings, thus " 'improperly increased her burden of proof' " contrary to the holding in Arakas (Id. at 15), the Court notes the following: SSR 16-3p clarifies the evaluation of symptoms, including pain: 20 C.F.R. § 404.1529 requires a finding of the extent to which an individual's statements about pain or other symptom(s) and its functional effects can reasonably be accepted as consistent with the objective medical evidence and other evidence; that explains the factors to be considered in assessing the consistency of the individual's statements about symptoms; and states the importance of explaining the reasons for the finding about the consistency of the individual's statements.

The Ruling further directs adjudicators to use a two-step process for evaluating an individual's symptoms: first, it must be determined that the individual has a medically determinable impairment (MDI) that could reasonably be expected to produce the individual's alleged symptoms; and second, the intensity and persistence of the individual's symptoms must be evaluated to the extent which they limit the individual's ability to perform work-related activities. See, SSR 16-3p, 2016 WL 1119029, at *3-4. This evaluation must be based on a consideration of

all of the evidence in the case record. This includes, but is not limited to: (1) the medical signs and laboratory findings; (2) diagnosis, prognosis, and other medical opinions provided by treating or examining physicians or psychologists and other medical sources; and (3) statements and reports from the individual and from treating or examining physicians or psychologists and other persons about the individual's medical history, treatment and response, prior work record and efforts to work, daily activities, and other information concerning the individual's symptoms and how the symptoms affect the individual's ability to work.

A claimant's symptoms, including pain, are considered to diminish her capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. § 404.1529(c)(4). Additionally, the Regulations provide that:

> [w]e will consider all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your treating, examining, or consulting physician or psychologist, and observations by our employees and other persons . . . Factors relevant to your symptoms, such as pain, which we will consider include:
> (i) Your daily activities;
> (ii) The location, duration, frequency, and intensity of your pain or other symptoms.
> (iii) Precipitating and aggravating factors;
> (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
> (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
> (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 or 20 minutes every hour, sleeping on a board, etc.); and
> (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

Id. § 404.1529(c)(3).

The Court further recognizes that "an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not

considered." See Manigo v. Colvin, 2015 WL 74954, at *5 (D.S.C. Jan. 6, 2015) (quoting Craig v. Apfel, 212 F.3d 433, 436 (8th Cir. 2000)). Indeed, "there is no particular language or format that an ALJ must use in his . . . analysis as long as there is sufficient development of the record and explanation of the findings to permit meaningful review." Clark v. Comm'r of Soc. Sec., 2010 WL 2730622, at *17 (E.D. Va. June 3, 2010) (quoting Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004)). The ALJ's opinion is sufficient if it "not only sets forth the facts used in rendering his decision, but it also provides a thorough examination of the medical evidence." Id.

As noted by the Plaintiff, the Fourth Circuit held that "an ALJ has the obligation to consider all relevant medical evidence and cannot simply cherrypick facts that support a finding of nondisability while ignoring evidence that points to a disability finding." See Arakas v. Comm'r, Soc. Sec. Admin., 983 F.3d 83, 98 (4th Cir. 2020) (internal citations omitted). The Fourth Circuit "reiterate[d] the long-standing law in our circuit that disability claimants are entitled to rely exclusively on subjective evidence to prove the severity, persistence, and limiting effects of their symptoms." Id. It is important to recognize that in Arakas, the Court concluded that substantial evidence did not support the ALJ's finding that the claimant's subjective complaints were inconsistent with her daily activities because the overall record actually supported her subjective complaints and demonstrated she would be unable to engage in substantial gainful activity. Id. Another significant, if not critical, aspect of the Arakas holding is that the Court found the ALJ's analysis included misrepresentations or overinflation of the claimant's abilities, to the exclusion of that evidence which did not support such a conclusion. Id. For purposes herein, this Court must determine if the subject ALJ's analysis relied primarily on the lack of objective medical evidence as the reason for discounting the Plaintiff's complaints.

In the written decision, the ALJ noted the following regarding the Plaintiff's physical impairments:

> The claimant alleged she was disabled due to a combination of impairments that impacted her from the alleged onset date through the date last insured. She described back pain with physical activities. She also described being able to stand and walk for about fifteen minutes. She discussed relying on her husband for assistance with chores due to her pain. She described her back pain as radiating down her legs with pain and tingling. She reported having neck pain that went down the left arm, mainly, and also presented with tingling in the fingers (Testimony). In her adult function reports, she described always being in pain, reducing activity due to pain, and needing assistance when standing from a sitting position after eating.

(Tr. at 15, 198, 203, 204, 205, 226, 228, 231, 232) After properly performing the two-step process, the ALJ proceeded to review the evidence of record and reconciled it with the Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms, and found that they "are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Tr. at 15)

The ALJ then referred to the medical record, discussed *supra*, noting that the Plaintiff received minimal, generally conservative treatment during the period under adjudication, despite her allegations of suffering from substantial dysfunction resulting from pain. (Id.) Additionally, the ALJ made several observations: imaging of the Plaintiff's neck and back revealed some abnormalities, which was treated with injections (Tr. at 16, 387, 833, 533); while these records[7] predated the Plaintiff's alleged onset date, the Plaintiff's "subjective symptoms did not match her overwhelmingly normal objective examinations" – though the Plaintiff had positive straight leg raising and some tenderness, she had normal range of motion, normal gait, and normal strength

---

[7] The records cited are from PARS Neurological Associates from 2012. The ALJ further noted that the Plaintiff did not return to PARS until November 2020, "well beyond the date last insured to obtain treatment for back pain and corresponding symptoms." (Tr. at 17, 588)

(Tr. at 16, 535, 550, 577); an MRI of the lumbar spine in May 2014 showing multilevel degenerative disc disease did not contain corresponding physical examination, and despite a nerve conduction study in 2015 due to the Plaintiff's complaints of low back pain with numbness and pain in the lower extremities, there are no corresponding examinations (Tr. at 16, 831-832, 305); an orthopedic examination in December 2017 showed the Plaintiff ambulated with a normal gait, retained intact sensation to light touch in all extremities, retained normal strength, and no reduced range of motion in the extremities (Tr. at 16, 348); pain management records from 2019 showed the Plaintiff had tenderness in her neck, back and both hips, for which she was prescribed Norco and Gabapentin (Tr. at 16, 303-304); in February 2019, the Plaintiff presented to orthopedics with complaints of low back and bilateral leg pain, and reported having no prior treatment for this condition, despite the record noting that she had been prescribed Norco and Gabapentin (Tr. at 16, 350); records post-dating the Plaintiff's DLI in April 2019 and September 2020 showed the Plaintiff received injections in her back, which proved effective per the Plaintiff's reports in follow up examinations – she exhibited a non-antalgic gait, normal heel-toe gait, and normal lower extremity findings, though she did have lumbar tenderness and a guarded decrease in range of motion in all planes (Tr. at 16-17, 357, 364-366, 365). The ALJ determined that the Plaintiff's performance during these examinations, limiting her to light exertional activity with additional limitations, including frequently overhead reaching bilaterally to prevent exacerbating her spinal pain, was consistent with the record during the relevant period. (Tr. at 17)

Moreover, regarding the Plaintiff's history of bilateral hip bursitis, the ALJ noted that this condition also predated her DLI, for which she received minimal treatment: PARS records in 2012 indicated findings of right lower extremity trochanteric bursa tenderness to palpation, but the

Plaintiff also had a normal gait, normal lower extremity range of motion, normal strength, and normal stability (Tr. at 17, 535, 550, 575-577). The ALJ next noted that the "record is then essentially void of treatment for these specific complaints until the claimant's orthopedic treatment performed in February 2019 (Tr. at 17, 350). The ALJ acknowledged that at that time, the Plaintiff was noted to have bilateral greater trochanter tenderness, strength testing limited secondary to pain, and decreased range of motion secondary to pain, however, after having been provided injections, the Plaintiff reported her symptoms improved (Tr. at 17, 352, 350, 354); at a follow up visit just three days later, the Plaintiff demonstrated full range of motion in her hips, no joint instability, and normal 5/5 muscle strength (Tr. at 17, 355). The ALJ also observed that the Plaintiff's subsequent examinations post-dating her DLI in April 2019 and September 2020 showed that although she experienced some tenderness in her SI joints and sacroiliac region, she retained full range of motion and normal 5/5 strength (Tr. at 17, 358-359, 362-363, 365-366). The ALJ further observed that treatment records long after the Plaintiff's DLI reveal some decreased physical capacity, but she was still capable of standing without difficulty and ambulating without assistance (Tr. at 17, 588). From the "minimal treatment" records and the Plaintiff's performance during the examinations, the ALJ determined light exertional work with certain limitations was appropriate.[8] (Tr. at 17)

---

[8] To the extent that the Plaintiff takes issue with the ALJ's characterization of her treatment as "minimal" and "conservative" (ECF No. 7 at 13), the undersigned construes this as a difference of opinion as to the frequency of treatment during the relevant period, and is of no moment. There is no dispute that there are significant gaps in the treatment records concerning the Plaintiff's severe impairments, which was clearly a consideration in the ALJ's analysis – a factor that an adjudicator "will consider" when evaluating subjective symptoms. See 20 C.F.R. § 1529(c)(3)(v). As an additional matter, while the Plaintiff appears to concede that "conservative" treatment only means nonsurgical treatment, but argues that the lack of surgery does not undermine her complaints of pain (ECF No. 7 at 13-14), it is notable that the ALJ observed that the Plaintiff reported improvement following conservative treatments. (Tr. at 16, 17) See also, Gross v. Heckler, 785 F.2d 1163, 1165 (4th Cir. 1986) ("If a symptom can be reasonably controlled by medication or treatment, it is not disabling.").

Regarding the Plaintiff's argument that her work history as a "credibility enhancing factor" in the symptom evaluation analysis, and that the ALJ erred by failing to consider her "historical willingness to work" (ECF No. 7 at 15), it is clear from the written decision the ALJ considered her work history, pursuant to Section 404.1529(c)(3): at the first step, the ALJ recognized the Plaintiff had worked after her alleged onset date but not at the level of substantial gainful activity (Tr. at 12, 166-171, 175); and at the fourth step, the ALJ noted she worked as a pharmacy tech from 2002 to approximately 2009 on a full-time basis but continued working in this capacity thereafter at reduced hours (Tr. at 20, 190-197, 166-171). The Plaintiff does not explain how this evidence would have changed the outcome of the ALJ's decision had he discussed her past relevant work further. However, it is notable that the ALJ did consider medical opinions from the Plaintiff's treating providers, *supra*, who appear to uniformly opine that she had no functional deficits that warranted preclusion from all work, let alone her past relevant work as a pharmacy tech.

The aforementioned demonstrates that the ALJ did not cherrypick only the evidence from the record to support a finding of nondisability; moreover, the ALJ's analysis demonstrates that he did not improperly increase her burden of proof that has been long considered verboten under Fourth Circuit jurisprudence, *supra*. There is no dispute that the Plaintiff is entitled to rely upon on her subjective complaints exclusively to prove her symptoms prevent her from working, however, this does not mean that the ALJ must accept her statements to the exclusion of the objective or other evidence of record – especially when there are inconsistencies with the overall record of evidence. See 20 C.F.R. § 404.1529(4). The ALJ is obligated to consider the Plaintiff's alleged functional limitations "can reasonably be accepted as consistent with the objective medical evidence and other evidence." Id. Accordingly, the undersigned **FINDS** that the RFC assessment

is supported by substantial evidence.

**Recommendations for Disposition**

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Court confirm and accept the foregoing findings and **RECOMMENDED** that the District Court **DENY** the Plaintiff's request for remand (ECF No. 7), **GRANT** the Commissioner's request to affirm the decision below (ECF No. 8), **AFFIRM** the final decision of the Commissioner, and **DISMISS** this matter from the docket of this Court.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Joseph R. Goodwin, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 106 S.Ct. 466, 475, 88 L.E.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.E.2d 933 (1986); Wright v. Collins, 766 F.2d 841 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.E.2d 352 (1984). Copies of

such objections shall be served on opposing parties, District Judge Goodwin, and this Magistrate Judge.

The Clerk of this Court is directed to file this Proposed Findings and Recommendation and to send a copy of same to counsel of record.

ENTER: October 11, 2023.



Omar J. Aboulhosn
United States Magistrate Judge